**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Ashtabula River Corporation Group II, | ) | CASE NO.  1:07 CV 3311 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Conrail, Inc., et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

### Introduction

This matter is before the Court upon Railroad Defendants' Motion to Dismiss Counts II, III and IV (Doc. 17).  This is a CERCLA action.  For the following reasons, the motion is GRANTED.

### Facts

Plaintiff, Ashtabula River Corporation Group II, filed this Complaint against defendants, Conrail, Inc., Consolidated Rail Corporation, Pennsylvania Lines LLC, Norfolk Southern Corporation, Norfolk Southern Railway Company, CSX Corporation and CSX Transportation, Inc. (collectively hereafter, the Railroad Defendants) and American Premier Underwriters, Inc.

1

The Complaint seeks "to recover costs that [plaintiff] has paid and will pay for investigation, design, construction, dredging, remediation and disposal activities related to contaminated sediment in the Ashtabula River and Harbor" resulting from hazardous substances as defined by the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). (Compl. ¶ 1) The Complaint sets forth six claims. Count One alleges that all defendants are jointly and severally liable under CERCLA to pay the costs and expenses incurred. Count Two alleges a common law public nuisance caused by defendants in contaminating the Ashtabula River and Harbor. Count Three alleges a public nuisance arising from defendants' violation of Ohio Revised Code Chapter 6111. Count Four alleges a public nuisance arising from defendants' violation of Ohio Revised Code § 3767.13. Count Five alleges unjust enrichment. Count Six alleges indemnity/contribution.

This matter is now before the Court upon Railroad Defendants' Motion to Dismiss Counts II, III and IV. The motion does not seek to dismiss Count I, the CERCLA claim, or Counts V and VI.

**Standard of Review**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). However, the complaint must contain "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). "In practice, a ... complaint must

2

contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

**Discussion**

**(1) Statute of limitations**

Railroad Defendants argue that Counts II, III and IV should be dismissed because these public nuisance claims are barred by the four-year statute of limitations set forth in Ohio Revised Code (O.R.C.) § 2305.09(D). Plaintiff agrees that the four-year statute of limitations is applicable, but asserts that it has not expired. For the following reasons, the Court agrees with Railroad Defendants that the claims are time-barred.

Under Ohio law, nuisances are classified as either permanent or continuing. "A permanent nuisance is governed by [the] four year statute of limitations ... and occurs when the defendant's tortious act has been fully accomplished but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant." *Gibson v. Park Poultry, Inc.,* 2007 WL 2358589 (Ohio App. 5th Dist. Aug. 13, 2007) (citing *Weir v. East Ohio Gas Company*, 2003 WL 1194080 (Ohio App. 7th Dist. March 12, 2003) ). A continuing nuisance, on the other hand, "arises when the wrongdoer's tortious conduct is ongoing, perpetually generating new violations." *Haas v. Sunset Ramblers Motorcycle Club, Inc.,* 132 Ohio App.3d 875 (3rd Dist. 1999). In cases of a continuing nuisance, "the statute of limitations is tolled, as the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights." *Gibson, supra.*

Railroad Defendants assert that this case involves a permanent nuisance, and that it is

3

barred by the statute of limitations because the Complaint fails to allege any affirmative act in the last four years. Rather, Railroad Defendant point out that the latest alleged polluting event occurred in October 1994- 13 years before the herein Complaint was filed in 2007.

Plaintiff contends that its Complaint clearly alleges that the conduct complained of has occurred within the last four years, and that it is an ongoing, continuing nuisance. Plaintiff points to three paragraphs of the Complaint in particular.

Paragraph 8 alleges in part:

"Conrail is responsible for environmental liabilities caused by or resulting from railroad operations conducted by itself and others from at least 1976 on property, lines, assets and facilities adjacent or related to the Ashtabula site..."

Plaintiff asserts that because this allegation does not state any date by which Conrail's wrongful conduct abated, it must be liberally construed in plaintiff's favor to state that Conrail's conduct continues to today. Additionally, plaintiff asserts that Paragraphs 11 and 12, referencing Norfolk Southern and CSX, show that the same holds true for these defendants, although the language "from at least 1976" is absent from these paragraphs.

Next, plaintiff points to Paragraph 73 which alleges:

PAHs, Hazardous Substances, Hazardous Waste and other causes of Pollution, including coal dust, are and have been discharged or released to the Ashtabula Site... as a result of railroad activities conducted by the defendants, including activities at the coal handling and railroad facilities,...

Plaintiff states that this allegation pleads an ongoing environmental contamination by the Railroad Defendants.

Finally, plaintiff points to Paragraph 76 which alleges in part:

From 1976 to the present, there has been numerous, unauthorized releases of PAHs, Hazardous Substances, Hazardous Waste and other causes of Pollution, including coal dust, into the Ashtabula River... as a result of railroad operations conducted thereon by

4

Conrail...

For the following reasons, this Court agrees with Railroad Defendants that these allegations fall short of alleging a continuing nuisance.

First, the Complaint fails to specifically allege that the wrongful conduct has occurred in the last four years, or that the conduct is an ongoing, continuing nuisance.  Second, the three paragraphs plaintiff relies upon are insufficient to establish a continuing nuisance.  The language in Paragraph 8, "from at least 1976," does not refer to any recent polluting activities.  Paragraph 73 does not mention any dates at all.  Presumably, plaintiff is leaning on the phrase, "*are* and have been discharged" in this paragraph.  (emphasis added)   Although this Court must liberally construe the Complaint, a reading that the word "are" (pointed out once by plaintiff within a 50 page Complaint) connotes a continuing nuisance is taking the liberal construction requirement too far.  Paragraph 76, while including the language, "from 1976 to the present," actually lists various polluting activities with specific dates, none of which is later than October 1994.  Thus, Paragraph 76 states that the offending railroad operations included: the release of diesel fuel in July 1979, the release of particulate matter into the air sometime prior to June 1980 and January 1982, the release of waste diesel fuel in September 1981, the release of waste diesel in December 1980 and June 1984, the release of waste diesel in August 1987, the release of waste diesel fuel in June 1988 and the release of diesel fuel in October 1994.  No more current dates of wrongdoing are included.  Moreover, there is no allegation here or anywhere in the Complaint that a nuisance event occurred after 2003 (within the four years prior to the filing of the Complaint).

For these reasons, the four-year statute of limitations bars Counts II, III and IV.

5

Dismissal of these claims is warranted on this ground. Assuming Counts II, III and IV are not subject to dismissal on the statute of limitations basis, dismissal is warranted as discussed below.

### (2) Same removal costs or damages

Railroad Defendants argue that because the Complaint seeks the same damages under Counts II, III and IV as it seeks to recover under CERCLA, the latter preempts these claims. For the following reasons, this Court agrees.

Section 114(b) of CERCLA states:

> Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

42 U.S.C. § 9614(b). Courts have recognized that this section is meant to prevent double recovery for the same removal costs. *See K.C.1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009 (8th Cir. 2007) ("Importantly, CERCLA articulates a policy against double recovery. *See* 42 U.S.C. § 9614(b) (prohibiting duplicate recovery for the same removal costs)."); *Bedford Affiliates v. Sills*, 156 F.3d 416 (2nd Cir. 1998) ("We have ruled that CERCLA as a whole does not expressly preempt state law, but simply prohibits states from "recovering compensation for the same removal costs or damages or claims under both CERCLA and state or other federal laws..."); *Vine Street. LLC v. keeling,* 460 F.Supp.2d 278 (E.D. Texas 2006) (Although "CERCLA § 114(a) purports not to preempt state law, ... § 114(b) makes clear that a CERCLA plaintiff cannot recover the same response costs twice.")

Railroad Defendants assert that because the Complaint alleges that *all* of the damages

6

and/or response costs are recoverable under § 107(a) of CERCLA, and Counts II, III and IV simply seek the same damages as those sought under the CERCLA claim, the state law claims should be dismissed as impermissibly attempting to recover twice.

Without expressly stating so, plaintiff does not dispute that it seeks the same damages for the state law claims as it does for the CERCLA claim.  Indeed, this Court agrees that plaintiff is seeking under CERCLA the same cost of dredging, transporting, treating and disposing of contaminated sediment from the Ashtabula River and Harbor as that sought by the state law claims. (*See* Compl. ¶¶ 94-101, 110, 119, 126)  Plaintiff argues, however, that cases interpreting Federal Rule of Civil Procedure 8(e) clearly hold that a plaintiff may simultaneously plead claims that are mutually exclusive although plaintiff may only recover once for its damages.  On this basis, plaintiff asserts that the possibility that it may prevail on the CERCLA claim which would prevent it from recovering the same damages under Counts II, III and IV, is not a ground to dismiss the state law claims.  Rather, plaintiff contends, the Court would need only ensure that plaintiff does not recover the same amounts of damages twice.  Plaintiff cites to *Blasland, Bouck & Lee, Inc. v. City of North Miami,* 96 F.Supp.2d 1375 (S.D.Fla. 2000), where a jury awarded damages in full on the state law claim and the court thereafter heard evidence on the CERCLA claims determining that damages were recoverable.  Without discussion of whether defendant moved to dismiss the claims, the Court merely stated that because plaintiff could not recover twice for the same costs, the court would not duplicate the award.

The Court agrees that dismissal of the state law claims is warranted on this basis. Plaintiff does not dispute that it is seeking exactly the same damages under § 107 of CERCLA

7

and Counts II, III and IV.  Where a plaintiff's set of damages recoverable under § 107 are not identical to the set of damages recoverable under state law, the causes of action are not seeking double recovery and the state law claims are not preempted.  *See New York v. Ametek, Inc.*, 473 F.Supp.2d 432 (S.D.N.Y. 2007).  Where, however, a plaintiff's CERCLA and state law claims seek recovery of the same response costs, courts have found that CERCLA preempts the plaintiff's right to recover under the state law.  *See Vine Street, LLC*, 460 F.Supp.2d at 757.  As plaintiff herein is seeking the same damages under § 107 of CERCLA as it is under the state law claims, these claims are subject to dismissal.

**(3) Economic loss rule**

Railroad Defendants assert that Counts II, III and IV should be dismissed based on the economic loss rule.  For the following reasons, this Court agrees.

Railroad Defendants point out that the Complaint states that plaintiff is "an unincorporated association of 14 companies organized to accomplish the environmental remediation of the Ashtabula site…." (Compl. ¶ 3)  Paragraph 6 of the Complaint describes the injury suffered:  "[Plaintiff] has and will suffer injury because it has paid the entire nongovernmental share of the investigation and the cleanup cost for the Ashtabula site…"  Railroad Defendants contend that the public nuisance causes of action in Counts II, III and IV are tort causes of action for pure economic losses under the general guise of nuisance.  Railroad Defendants point to *Queen City Terminals v. General American Transportation Corp.*, 73 Ohio St.3d 609 (1995), which states that indirect economic damages that do not arise from tangible physical injury to persons or from tangible property may only be recovered in contract.  There are no contractual claims in the Complaint, and plaintiff only

alleges economic loss and not any injury to its property or person. Railroad Defendants rely on *RWP, Inc., v. Fabrizi Trucking & Paving Co.* 2006 WL 2777159 (Ohio 8th App. Dist. Sept. 28, 2006), wherein the court rejected plaintiffs' assertion that the economic loss rule did not apply to actions for public nuisance and stated,

> The economic-loss rule generally prevents recovery in tort of damages for purely economic losses. The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.

*Id.* (citing *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Company*, 42 Ohio St.3d 40 (1989). Railroad Defendants assert that because plaintiff is not a landowner, there is no allegation of injury to real property or persons, and the only injury to plaintiff is a pecuniary one which is barred by the economic loss rule.

Although plaintiff does not dispute that its only injury is pecuniary, plaintiff argues that the economic loss rule is not applicable to bar their claims. Plaintiff argues that its case is factually distinguishable from *RWP, Inc., supra*. Plaintiff also points to numerous cases (outside Ohio) which plaintiff asserts have concluded that the economic loss rule does not bar tort claims that are independent of a contract claim. Finally, plaintiff contends that its claims are analogous to those where courts (outside Ohio) have declined to apply the economic loss rule. For the following reasons, plaintiff's assertions are not persuasive.

The Ohio Supreme Court has recently recognized the validity of the economic loss rule: "The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Corporex Development & Construction Management, Inc. v. Shook,* 106 Ohio St.3d 412 (2005) (citing *Chemtrol Adhesives, Inc., supra*). Thus, in the absence of

9

physical harm to persons and tangible things, there can be no recovery in negligence. Ohio courts have found that the economic loss rule applies to claims of public nuisance. *RWP, Inc., supra.* Plaintiff urges this Court to conclude that because *RWP, Inc.* is not factually similar, the economic loss rule should not apply here. The Court disagrees. In *RWP, Inc.*, defendant was hired by the County to widen a road. In the process, defendant cut telephone cables, owned by the phone company whose customers suffered telephone, fax and internet outages. Plaintiffs, whose services were lost during that time, sued defendant on theories of negligence and public nuisance. Plaintiffs failed to demonstrate that they suffered harm to their persons or property as a result of the outages. Having only economic losses, plaintiffs could not recover on their tort claims.

The court expressly found that the economic loss rule was applicable to actions for public nuisance given that it is a theory of recovery in tort, and the Ohio Supreme Court has recognized that the economic loss rule prevents recovery in tort of damages for purely economic loss. Thus, regardless of the factual distinctions between *RWP, Inc.* and the case herein, plaintiff's public nuisance claims are tort claims for which only damages for economic loss is sought. Accordingly, under Ohio law, Counts II, III and IV are barred by the economic loss rule. Plaintiff asserts that its claims are fundamentally different from those asserted in *RWP, Inc.* in that plaintiff herein is not seeking to recover consequential damages that remotely flow from the tortious conduct of a third party, but it is seeking to be reimbursed for the special harm resulting from the costs incurred to abate contamination caused by defendants' conduct. Ohio courts, however, have not made an exception for purely economic injuries of this nature.

Despite the fact that the economic loss rule has been applied by Ohio courts to public nuisance claims alleging only pecuniary injury, plaintiffs contend that courts outside this district have concluded that the economic loss rule does not bar such tort claims.  Aside from failing to rely on Ohio cases, plaintiff's argument is unconvincing.  Plaintiff points out, for instance, that in *In Re Methyl Tertiary Butyl Ether Products Liability Litigation,* 457 F.Supp2d 298 (S.D.New York 2006), the court recognized that the economic loss rule does not always bar the recovery of economic losses in a negligence case.  The court, however, noted that where "plaintiff suffers both physical injury and economic loss, economic losses resulting from physical injury are recoverable." *Id.* at 317.  That rule, of course, is no different from Ohio's doctrine.  Plaintiffs in that case had alleged personal injury and property damage.  *Id.* at 317.  Plaintiff herein has not.

Plaintiff points to Florida's recognition of an exception to the economic loss rule for causes of action based on torts that are independent of a contractual breach, such as fraudulent inducement.  Plaintiff, however, is not alleging a tort independent of a breach of contract, but simply a tort wherein only economic loss allegedly occurred.  Such is barred by the economic loss doctrine.

Finally, plaintiff states that its case is analogous to *Union Oil Co. v. Oppen*, 501 F.2d 558 (9th Cir. 1974), where the Ninth Circuit held that oil companies responsible for an oil spill had a duty to commercial fishermen damaged thereby to conduct their offshore drilling and production in a reasonably prudent manner so as to avoid the negligent diminution of aquatic life.  As a result, the court determined that the fishermen could recover damages representing profits lost as a result of reduction in the commercial fishing potential of the area- damages

which defendants had characterized as pure economic loss which was not recoverable. The Court herein is unwilling to disturb the law in Ohio precluding damages for economic loss founded on public nuisance claims based on *Union Oil Co.* given the narrow application of that case. As the Ninth Circuit recognized there, "The injury here asserted by the plaintiff is a pecuniary loss of a particular and special nature, limited to the class of commercial fishermen which they represent."

For these reasons, Counts II, III and IV are subject to dismissal based on the economic loss rule.

### (4) Standing as to Count IV

Railroad Defendants argue that plaintiff lacks standing to assert its claim in Count IV under Ohio Revised Code § 3767.13. This Court agrees.

Count IV alleges a public nuisance arising from violations of Ohio Revised Code §3767.13. The Complaint cites §3767.13(C) which states:

> No person shall unlawfully obstruct or impede the passage of a navigable river, harbor, a collection of water, or corrupt or render unwholesome or impure, a watercourse, stream, or water or unlawfully divert such watercourse from its natural course or state to the injury or prejudice of others.

Ohio Revised Code § 3767.03 provides a list of governmental entities with standing to bring an action to abate the nuisance and refers to non-governmental entities who have standing: "any person who is a citizen of the county in which the nuisance exists may bring an action in equity in the name of the state…to abate the nuisance and perpetually enjoin the person maintaining the nuisance from further maintaining it." Count IV does not allege that plaintiff is a "person who is a citizen of the county in which the nuisance exists." Nor does the Complaint allege that plaintiff is making the claim in the name of the state, or that it is

12

seeking relief in equity.

Plaintiff does not dispute that it is not a governmental entity authorized to bring an enforcement action or an authorized non-governmental actor.  Plaintiff, however, contends that it may bring this claim as a public nuisance or negligence *per se* claim based on Railroad Defendants' violation of the statute.

The Court will not permit plaintiff to override the statutory language in this manner. Furthermore, plaintiff does not allege negligence *per se.*  Count IV is subject to dismissal on this alternative basis.

**(5) No private cause of action under Count III**

Count III alleges that defendants created a public nuisance by its violation of Ohio Revised Code Chapter 6111 which prohibits pollution of Waters of the State.  Railroad Defendants assert that claims under this chapter may be made only by the Director of the Ohio Environmental Protection Agency, and there is no private right of action.

Plaintiff contends that its Complaint is not purporting to assert a direct claim under this chapter, but instead is alleging a public nuisance claim based on defendants' conduct or negligence *per se.*

Courts in Ohio, however, have recognized that there is no private right of action under Chapter 6111, "but instead charges the state government with enforcing its provisions." *Save the Lake v. Hillsboro*, 158 Ohio App.3d 318 (Ohio App. 4th Dist. 2004); *Uland v. S.E. Johnson Cos*.,1998 WL 123086 (Ohio App. 6th Dist. Mar. 13, 1998) (stating that any claim based on Chapter 6111 regarding "waters of the state" is inapplicable because no private right of action exists under that chapter).

13

For this reason, Count III is subject to dismissal on this basis as well.

**(6) Leave to amend**

Finally, plaintiff states in the concluding paragraph of its brief, "In the event that the Court does grant any aspect of the Motion, then [plaintiff] respectfully requests leave to amend its Complaint."  (Doc. 34 at 19) Plaintiff does not submit any proposed amendment.  The Court declines leave to amend the Complaint.  Where, such as here, a plaintiff merely requests in a single sentence in a responsive brief leave to amend without providing grounds or a proposed amended complaint to support the request, a court properly denies the request. *Evans v. Pearson Enterprises, Inc.,* 434 F.3d 839 (6th Cir. 2006).

### Conclusion

For the foregoing reasons, Railroad Defendants' Motion to Dismiss Counts II, III and IV is granted.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/14/08